No. 19,595.

Carl B. White *v.* Dan Kehmeier, et al.
(362 P. [2d] 860)

Decided June 19, 1961.

Mr. Nicholas E. Darrow, for plaintiff in error.

Messrs. Bryant, Petrie, Waldeck & King, for defendants in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

We shall refer to the parties as they appeared in the trial court, where plaintiff in error was plaintiff and defendants in error were defendants.

In his complaint plaintiff alleged that he is the owner of certain ditch, reservoir and water rights which take their supply of water from Oak Creek and that defendants own certain other ditch, reservoir and water rights which take their supply of water from nearby Doughspoon Creek. It is further alleged that both Oak Creek and Doughspoon Creek derive their water from a common source, namely, from the melting snow on Grand Mesa and that when the snow on Grand Mesa melts the water, flowing downward in numerous threads or fingers, eventually cascades over the rim of Grand Mesa, with some of these threads or fingers eventually going into Oak Creek and others into Doughspoon Creek. It is at once obvious that plaintiff, who owns water rights decreed from the water in Oak Creek, is interested in preventing waters tributary to the Oak Creek drainage basin from being diverted elsewhere; and that defendants, owners of decreed rights from Doughspoon Creek, are for the same reason interested in preventing the tributary waters of Doughspoon Creek from being diverted elsewhere. Plaintiff further alleged that defendants have unlawfully made an artificial diversion of water from Oak Creek or, more accurately, from one of the tributary channels to Oak Creek, and that as a result thereof these defendants, without the benefit of an adjudication decree, have diverted water which would normally run in Oak Creek into the Doughspoon Creek basin. As a result of this unlawful diversion plaintiff contends that he is deprived of the full use of the various water rights which have been adjudicated to him out of Oak Creek. Accordingly plaintiff sought to enjoin defendants from any further wrongful diversion of water from Oak Creek to Doughspoon Creek and additionally sought an order compelling defendants "to replace and reconstruct the bank of Oak Creek at the point of such diversion to its former condition or to construct a headgate and measuring device to permit regulated flow subject to prior decrees in Oak Creek."

In their answer defendants generally admitted the allegations of the respective ownership by the parties of the described ditch, reservoir and water rights and also admitted the allegations as to the terrain and topography, but categorically denied that they or either of them had ever diverted any water from Oak Creek to Doughspoon Creek and countercharged that it was actually the plaintiff who had artificially dammed and diverted water from the Doughspoon Creek basin into the Oak Creek drainage system.

Trial was to the court and after all the evidence was presented it was agreed by counsel that the trial judge should make a personal inspection of the locale of this controversy before rendering a decision. This inspection was made by the trial judge, and in view of the nature of the pivotal issue in the case is a procedural fact of some importance. Thereafter, the trial court made written findings, in part as follows:

\* \* \*

"1. There are two public streams, known as Oak Creek and Doughspoon Creek, both of which arise on the slope below the rim of the Grand Mesa.

\* \* \*

"4. Water from Grand Mesa, which largely comes from snow melt, runs over the rim and makes a sharp descent over and through an area consisting largely of boulders and rocks of all sizes, and some distance below, forms an identifiable channel in and around which there are rocks, fallen trees, other debris and some dirt. At the point in controversy, the topography is such that a small hill causes a natural division of the water, part forming the head of Oak Creek and part into the Doughspoon Creek drainage.

"5. The situation is such that a few boulders or trash or fallen trees could easily change the natural flow from one channel to the other, but in the course of natural events, the force of the spring runoff would alter condi-

tions each year and the flow to one side or the other would vary accordingly.

"6. Both plaintiff and defendants have interfered with the natural course of events by moving rocks and cutting off the roots or limbs of fallen trees so as to divert more water to one side or the other. This work, however, will not cause any permanent change in the flow, in view of the natural forces, if any future interference is prevented. It is not possible to determine which party has suffered or benefited the most from this work.

"7. Neither party has a headgate decreed at the point in controversy, and there are other water users downstream on each side who could be prejudiced by further interference with the natural flow of the streams."

\* \* \*

Based on these findings the trial court permanently enjoined *both* plaintiff and defendants from interfering with the natural flow of water at the point in controversy, which point incidentally was described with sufficient particularity to fully apprise the parties, but the trial court declined to require defendants to reconstruct the bank of Oak Creek or to install a headgate.

Plaintiff seeks reversal of the judgment by writ of error. Plaintiff presumably does not attack that part of the judgment which permanently enjoins defendants from interfering with the "natural flow of the water," since such is what he sought, and apparently voices no objection to the fact that the injunctive order also enjoins him from such clandestine activity. His complaint is generally directed to the determination of the trial court as to what constitutes the "natural flow of water" and in particular he attacks the finding of the court "that a small hill causes a natural division of the water, part forming the head of Oak Creek and part of the Doughspoon drainage." It is plaintiff's theory that at the point of the present controversy there is *no* natural division of water, but only an artificial diversion created by these defendants, and but for this artificial diversion no

water would flow into Doughspoon Creek but all would go down Oak Creek. There are numerous other assignments of error, but if it be determined that there is sufficient evidence to support the finding that there is a natural division of water between Oak Creek and Doughspoon Creek and that neither the plaintiff nor the defendants have by their actions materially changed such division, then such a determination would be dispositive of the case and would render immaterial these other assignments of error.

The basic issue, therefore, before the trial court was whether the streams of water coming from the snow melt on Grand Mesa naturally divided, some going into the Oak Creek basin and some into the Doughspoon basin, or whether this was an artificial diversion made by these defendants. As was above noted, the trial court found at the point in controversy the division of water was a natural one caused by a small hill. Plaintiff contends there is *no* evidence to support such a finding and that, on the contrary, all the evidence showed that instead of a natural division there was an artificial diversion made by a cut in the bank of Oak Creek.

Careful examination of the record convinces us that there is ample evidence of sufficient substance to support the finding of the trial court that at the point in controversy there really is a "small hill [which] causes a natural division of the water." Certainly defendants and their several witnesses offered testimony to support such a conclusion. And one of plaintiff's own witnesses, Frederick W. Paddock, a civil engineer and land surveyor, conceded that there was a "small hill or knoll" at the point in controversy, and declined to testify that there was an artificial rather than a natural division of the water. Paddock additionally explained that "the channel changes at the point of controversy into sort of a flat spot. * * * It will allow the water to flow in any direction that there is an opening so that the water flows in two directions at the same point." Suffice it to say, there

is ample evidence to support the finding of the trial court that there was a natural division at the point of controversy.

That there is a natural division of these waters does not preclude the possibility that man has given nature an assist by also making an artificial diversion, and in the instant case the evidence amply supports the finding of the trial court that both plaintiff and defendants had interfered with this natural flow. Upon trial both plaintiff and defendant, Dan Kehmeier, admitted that on occasion each had moved rocks and cut off tree roots which resulted in diverting more water to one side than the other. Each claimed, however, that in so doing he was merely "undoing" the work of the other with the purpose of returning the stream to its true and original channel. On this state of the record the trial court understandably found that it "is not possible to determine which party has suffered or benefited the most from this work" and enjoined all from future interference with the natural flow.

Plaintiff's remaining assignments of error relate to the alleged insufficiency of the evidence. No good purpose would be served by stating each such assignment and then pointing out the testimony which this court believes supports the particular finding of the trial court. The first assignment of error relating to the finding that a small hill caused a natural division of the water, is both illustrative and typical of the others. True, in each instance there was evidence to support plaintiff's theory of the case, but the trial court, not this court, is the trier of the facts. See *Andersen-Randolph Co. Inc. v. Taylor*, 146 Colo. 170, 361 P. (2d) 142, wherein numerous cases are cited in support of the axiomatic proposition that findings of a trial court sitting without a jury are binding on review by writ of error unless the evidence is wholly insufficient to sustain them. In the instant case the evidence instead of being wholly insufficient is, on

the contrary, ample to sustain all material findings of the trial court. The judgment is therefore affirmed.

MR. JUSTICE DAY and MR. JUSTICE DOYLE not participating.